KINGERY CONSTRUCTION COMPANY, A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. SCHERBARTH WELDING, INC., A CORPORATION, APPELLANT AND CROSS-APPELLEE.

185 N. W. 2d 857

Filed April 9, 1971. No. 37688.

Joseph F. Chilen and Denney, Denney & Sass, for appellant.

Ginsburg, Rosenberg, Ginsburg & Krivosha and Cathcart, Wishnow & Knight, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an action for damages for violation of a contract. The defendant appeals from an adverse judgment and the plaintiff has cross-appealed contending inadequacy of the damages allowed. The errors assigned relate to construction of a contract and the amount of damages awarded by the jury. We affirm the judgment of the district court.

The plaintiff, Kingery Construction Company, is a general contractor engaged in the business of constructing commercial buildings. Plaintiff entered into a contract with the Ralston Purina Company for the construction of a chow mill in Lincoln, Nebraska. The proposed structure called for the installation of 3 10,000-bushel steel storage tanks. The plaintiff obtained outside bids and quotations for the installation of these tanks since plaintiff did not have the equipment, men, or necessary background for such a job. A quotation of $3,157 was obtained from the defendant, Scherbarth Welding, Inc., of Fairbury, who was known to be engaged in the installation of such structures. Based upon the defendant's quotation, plaintiff made its overall general bid and quotation to Ralston Purina. On September 18, 1967, a written subcontract agreement was signed by plaintiff and defendant, in which the defendant agreed to erect the three steel tanks. Defendant never did erect the tanks, thus requiring the plaintiff to allegedly expend $10,290.27 in excess of the subcontract agreement to complete the construction. Plaintiff brought suit to

recover this money, alleging the defendant had breached the agreement.

The defense, in substance, contends that time was of the essence under the terms of the contract and that the plaintiff had failed to prepare the preliminary work for the installation of the steel bins on time, and thus prevented the defendant from erecting the tanks. The jury found for the plaintiff in the amount of $1,124.47 and the district court entered judgment thereon.

Under the parties' agreement, defendant was to complete installation of the tanks within 5 weeks after the foundation and base were ready, allowing the plaintiff to complete the entire job by June 15, 1968. The defendant was to begin work on the project within 3 calendar days after being notified in writing by the plaintiff to do so. If the defendant did not begin the job within these 3 days, plaintiff had the right to take over the contract and charge the defendant the costs of completion.

After signing the agreement, the parties proposed various dates when the defendant could begin installation of the tanks. Because of certain difficulties, the plaintiff was delayed in preparing the preliminary concrete base. *On December 20, 1967,* the plaintiff wrote the defendant explaining that the originally proposed date of March 18, 1968, would have to be postponed and that the plaintiff would notify the defendant when installation of the tanks could begin.

On June 15, 1968, plaintiff notified the defendant that the foundations had been prepared and, in accordance with the agreement, defendant now had 3 days to begin installing the tanks. Because of other commitments defendant had made, it was unable to begin the work within the 3-day period. As a result, plaintiff took over the job.

Defendant claims that time was of the essence in the contract and since the contract said that the defendant's obligation was to be completed by June 15, 1968, plain-

tiff's failure to complete the preliminary work with reference to the foundation disallowed the defendant on the premises to complete the job, excused the defendant from completing its part of the agreement. A review of the evidence in this record shows that the parties did not intend the day of June 15, 1968, to be of the essence to the contract.

The evidence in the record in this case shows that it is customary in building contracts to fix a time when the work is to begin and another time when the work is to be completed. Generally, neither of these times is considered to be of the essence to the contract unless there is a special stipulation to that effect. Construction contracts are subject to many delays, the reasons for which may often be difficult to determine. The parties usually foresee that such delays will occur and thus do not consider performance by the contractor at the agreed time to be of the essence. See 3A Corbin on Contracts, § 720, p. 377 (1960). We have said: "Time is not generally considered as the essence of a contract, unless it is expressly provided or it appears it was the intention of the parties that it should be of the essence thereof." Melville Lumber Co. v. Welpton Lumber Co., 121 Neb. 370, 236 N. W. 438. See, also, Morison v. Fremont Joint Stock Land Bank, 130 Neb. 104, 264 N. W. 163.

In the case before us here, no express date was given when the defendant was to start the work, the only precedent condition stipulated being that the plaintiff give the defendant a 3-day notice when to begin working. However, the parties did state that the defendant was to complete the work by June 15, 1968. The evidence shows that because of severe winter weather, underground water problems at the construction site, and other complexities of the work involved, the plaintiff was not able to complete the base and foundation for the installation of the steel bins until May 31, 1968. Since the defendant needed 5 weeks to complete

its obligation, the June 15 deadline obviously could not be met. The evidence shows that both parties have been in the construction business for many years and that both knew the special problems in such a job as this. As stated, at the outset, both parties realized that there might be considerable delay before the preliminary work would be completed. In a message on January 10, 1968, defendant told the plaintiff that upon unloading the construction materials it was found certain items were damaged. Defendant then said: "(T)here will be considerable delay before bins are erected." The defendant never told the plaintiff that it was withdrawing from the contract because of the delays. It was only when defendant's counsel notified the plaintiff on June 22, 1968, that it would have to bear the cost of any delay that the plaintiff realized the defendant regarded June 15, 1968, as the terminal date. It is unnecessary to set out the correspondence between the parties in full. Suffice to say that the correspondence and the actions taken by both parties clearly show that June 15, 1968, was not considered to be of the essence. We therefore come to the conclusion that the defendant was not relieved of its duty to complete the contract and the plaintiff had the right to sue for the defendant's breach.

We turn now to the cross-appeal of the plaintiff in which it complains of the inadequacy of the verdict in the sum of $1,124.47. The verdict will not be set aside as inadequate unless it is clearly against the weight and reasonableness of the evidence, and is so disproportionate to the injury proved as to indicate that it was the result of passion, prejudice, or mistake. Cover v. Platte Valley Public Power & Irr. Dist., 173 Neb. 751, 115 N. W. 2d 133. The record in this case shows that the only major necessary expenditure the plaintiff was put to in the erection of the bins, on the breach of the defendant, was the acquisition of rental equipment in the amount of $1,301.84. The contract price was for $3,157. The evidence shows that the plaintiff, an experienced

construction firm, had men in its employ with the necessary expertise for the erection of the bins and all that was necessary in order to perform the contract was the rental of special equipment. The matter of damages, of course, is for the jury and in light of this situation, we are unable to say that the verdict of the jury was so inadequate or so disproportionate as to indicate that it was the result of passion, prejudice, or mistake. There is no merit to this contention.

The judgment of the district court is correct and is affirmed.

AFFIRMED.